

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
Civil Action No. 1:05-CV-081

| | |
|---|---|
| **RONALD BLANCHARD** ) | |
| ) | BRIEF IN SUPPORT OF |
| Plaintiff, ) | DEFENDANT'S MOTION TO |
| ) | DISMISS OR STAY TO ALLOW |
| vs. ) | FOR ARBITRATION UNDER |
| ) | FEDERAL ARBITRATION ACT |
| **MBNA AMERICA BANK, N.A.** ) | |
| ) | |
| **Defendant.** ) | |

NOW COMES Defendant MBNA America Bank, N.A. ("MBNA") and files this brief in support of its motion to dismiss or stay further proceedings to permit arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 6 and 9. In support, MBNA states the following:

### Introduction: Mr. Blanchard's Accounts with MBNA

Plaintiff Ronald Blanchard ("Mr. Blanchard") is an attorney in Hendersonville who opened three credit accounts ("Accounts") with MBNA more than ten years ago:

**Table 1: Account Information**

| Type | Account Numbers | Date Opened | Date Of Upgrade | Chargeoff Date | Balance at Chargeoff |
|---|---|---|---|---|---|
| MasterCard | 5329-0315-0624-6535 (Original)<br>5490-9935-2665-7673 (Upgrade)<br>5490-9935-2696-7270 (New Card #)<br>5490-9939-9989-5941 (Charge-Off) | 9/6/1984 | 10/16/1999 | 05/31/2004 | $17,487.16 |
| Gold Reserve | 7499-0034-0338-71 (Original)<br>7499-0999-8645-75 (Charge-Off) | 5/27/1987 | [none] | 10/30/2004 | $10,303.24 |
| MasterCard | 5490-9906-3301-1323 (Original)<br>5200-0103-1100-1008 (Upgrade)<br>5200-0109-9978-3414 (Charge-Off) | 8/18/1994 | 03/02/2002 | 05/31/2004 | $21,557.21 |
| | | | | **Total** | **$49,347.61** |

*See* Deborah L. Fisher Affidavit, ("Fisher Affid.") ¶ 4. One Account is an affinity card with the National Association of Criminal Defense Lawyers. *See* Carlton Moss Affidavit, ("Moss Affid.") ¶8. During 1997, Mr. Blanchard signed and sent to MBNA at least one letter authorizing MBNA to speak with his manager, Kathy McDonald, regarding one of the Accounts. *See* Fisher Affid., ¶19 & Exh. L. In subsequent correspondence to MBNA, Mr. Blanchard advised that he "had the right to direct control of her while performing services for him" and that Ms. McDonald "was responsible for family bank accounts, containing checks for signature by Blanchard, opening bank statements, balancing the bank statements, in addition to other clerical duties." *See* Moss Affid., ¶ 6 and Exh. A. Mr. Blanchard made regular periodic payments on these accounts until 2003, using checks drawn on his law firm office account. *See* Fisher Affid., ¶ 17 and Exhs. D-F. However, Mr. Blanchard stopped making payments, and the three Accounts were charged off in 2004 and sent for collection via arbitration. *Id.*, ¶ 20. Mr. Blanchard now claims that he never used any of the Accounts. This dispute centers on whether arbitration is the proper vehicle to resolve the amounts owed to MBNA.

### Mr. Blanchard's Account Agreements with MBNA

Each time an Account was opened, Mr. Blanchard was sent an Agreement governing his use of the Account (the "Agreements"). The Agreements include provisions governing amendments, provide that Delaware law governs their interpretation, and state that use of the Account constitutes

2

acceptance of the terms of the Agreement. *See* Fisher Affid., ¶¶ 5-6, and Exh. A.

From time to time, MBNA amends the Agreements pursuant to the "Amendments" provision. MBNA accomplishes an amendment by mailing written notices to its account holders. MBNA maintains computerized customer information for its current account holders, and MBNA periodically updates this information when account holders notify MBNA that their address or name has changed. When the United States Post Office returns an account holder's statement or other MBNA mailing to MBNA as undeliverable, MBNA makes a notation in that account holder's customer information file. *See Id.*, at ¶¶ 8-12.

### The December 1999 Amendment to Mr. Blanchard's Agreements

MBNA followed its regular amendment procedure when, in December 1999, it amended Mr. Blanchard's Agreements (the "Amendment") to add certain terms, including the following mandatory arbitration provision (the "Arbitration Clause"):

> **As provided in your Credit Card Agreement and under Delaware law, we are amending the Credit Card Agreement to include an Arbitration Section. Please read it carefully because it will affect your right to go to court, including any right you may have to have a jury trial. Instead, you (and we) will have to arbitrate claims. You may choose not to be subject to this Arbitration Section by following the instructions at the end of this notice. This Arbitration Section will become effective on February 1, 2000. The Arbitration Section reads:**
>
> **Arbitration**: Any claim or dispute ("Claim") by either you or us against the other, or against the employees, agents or assigns of the other, arising from or relating in any way to this Agreement or any prior Agreement or your account (whether under a statute, in contract, tort, or otherwise and whether for money damages, penalties or declaratory

3

or equitable relief), including Claims regarding the applicability of this Arbitration Section or the validity of the entire Agreement or any prior Agreement, shall be resolved by binding arbitration.

The arbitration shall be conducted by the National Arbitration Forum ("NAF"), under the Code of Procedure in effect at the time the claim is filed. Rules and forms of the National Arbitration Forum may be obtained and Claims may be filed at any National Arbitration Forum office, www.arb-forum.com, or P.O. Box 50191, Minneapolis, Minnesota 55405, telephone 1-800-474-2371. If the NAF is unable or unwilling to act as arbitrator, we may substitute another nationally recognized, independent arbitration organization that uses a similar code of procedure. At your written request, we will advance any arbitration filing fee, administrative and hearing fees which you are required to pay to pursue a Claim in arbitration. The arbitrator will decide who will be ultimately responsible for paying those fees. In no event will you be required to reimburse us for any arbitration filing, administrative or hearing fees in an amount greater than what your court costs would have been if the claim had been resolved in a state court with jurisdiction. Any arbitration hearing at which you appear will take place within the federal judicial district that includes your billing address at the time the Claim is filed. This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"). Judgment upon any arbitration award may be entered in any court having jurisdiction. The arbitrator shall follow existing substantive law to the extent consistent with the FAA and applicable statutes of limitations and shall honor any claims or privilege recognized by law. If any party requests, the arbitrator shall write an opinion containing the reasons for the award.

No Claim submitted to arbitration is heard by a jury and no Claim may be brought as a class action or as a private attorney general. You will not have the right to act as a class representative or participate as a member of a class of claimants with respect to any Claim. This Arbitration Section does not apply to Claims between you and us previously asserted in any lawsuits filed before the date this Arbitration Section becomes effective. However, this Arbitration Section applies to all Claims now in existence or that may arise in the future.

This Arbitration Section shall survive the termination of your account with us as well as any voluntary payment of the debt in full by you, any bankruptcy by you or sale of the debt by us.

For the purposes of this Arbitration Section, "we" and "us" means MBNA America Bank, N.A., its parent, subsidiaries, affiliates,

4

licensees, predecessors, successors, assigns, and any purchaser of your account, and all of the officers, directors, employees, agents and assigns or any and all of them. Additionally, "we" or "us" shall mean any third party providing benefits, services, or products in connection with the account (including but not limited to credit bureaus, merchants that accept any credit device issued under the account, rewards or enrollment services, credit insurance companies, debt collectors and all of their officers, directors, employees and agents) if, and only if, such a third party is named by you as a co-defendant in any Claim you assert against us. Also, for the purposes of this Arbitration Section, "you" or "yours" shall mean any person or entity approved by us to use the account, including but not limited to all persons or entities contractually obligated on the Account and all authorized users of the account.

If any part of this Arbitration Section is found to be invalid or unenforceable under any law or statute consistent with the FAA, the remainder of this Arbitration Section shall be enforceable without regard to such invalidity or unenforceability.

THE RESULT OF THIS ARBITRATION SECTION IS THAT, EXCEPT AS PROVIDED ABOVE, CLAIMS CANNOT BE LITIGATED IN COURT, INCLUDING SOME CLAIMS THAT COULD HAVE BEEN TRIED BEFORE A JURY, AS CLASS ACTIONS OR AS PRIVATE ATTORNEY GENERAL ACTIONS.

*If you do not wish your account to be subject to this Arbitration Section, you must write to us at MBNA America, P.O. Box 15565, Wilmington, DE 19850. Clearly print or type your name and credit card account number and state that you reject this Arbitration Section. You must give notice in writing; it is not sufficient to telephone us. Send this notice only to the address in this paragraph; do not send it with a payment.* **We must receive your letter at the above address by January 25, 2000 or your rejection of the Arbitration Section will not be effective.**

See Fisher Affid., ¶¶ 9-12 and Exhs. B-D. Using the information contained in its customer information files, MBNA generated a list of names and addresses of account holders designated to receive the Amendment. Mr. Blanchard's accounts were included on this list. See id. ¶ 9. MBNA sent this list to a third-party vendor regularly used by MBNA since 1994 to effect mailings to MBNA account holders. At MBNA's request, the third party vendor performed certain

data processing to ensure that the Post Office would deliver the Amendment to the intended MBNA account holders, including Mr. Blanchard. *See id.* ¶ 9.

Following this data processing, the third party vendor mailed the Amendment in December 1999 to the MBNA account holders on the list of individuals designated to receive the Amendment. All such account holders, including Mr. Blanchard, were sent the Amendment as a separate mailing, not in the same envelope as their monthly account statements. *See* Fisher Affid., ¶ 10. The Amendment was mailed to Mr. Blanchard at the address MBNA had on its files for him at the time: Ronald G. Blanchard, P.O. Box 868, Hendersonville, NC 28793. This is the same address MBNA used to send Mr. Blanchard's monthly billing statements. Moreover, Mr. Blanchard sent payments on his three Accounts using checks bearing this address. *See id.*, ¶ 12 and Exhs. H-J. While the United States Post Office from time to time returned mail that was undeliverable, according to MBNA's records Mr. Blanchard was not among the account holders whose Amendment was returned as undeliverable. *See id.*, ¶ 11.

### Mr. Blanchard Did Not Opt Out of The Arbitration Clause and Continued to Make New Charges to His Three Accounts

The Amendment sent to Mr. Blanchard expressly informed him that he could opt out of the Arbitration Clause by providing MBNA with written notification by January 25, 2000. *See* Fisher Affid., ¶ 13. Several MBNA account holders opted out of the Arbitration Clause by providing the required written notification, and MBNA maintains a computerized "Opt Out File" to

#781643_1.DOC

track these account holders. However, none of Mr. Blanchard's Accounts is listed in the Opt Out File. *See id.*, ¶¶ 14-15.

After January 25, 2000, Mr. Blanchard continued to incur charges and make regular payments on his three Accounts. *See id.*, ¶¶ 16-17 and Exhs. E-J. As the following table demonstrates, Mr. Blanchard made numerous purchases that benefited him and his law firm: he used the Accounts to pay his law firm telephone bill, his personal business taxes, his Continuing Legal Education Bills, his travel expenses, and other charges:

**Table 2: Some of Mr. Blanchard's Charges**

| Charge: Payee and Description | Date | Amount | Card Ending 6535/7673 | Card Ending 338-71/645-75 | Card Ending 1323/1008 |
|---|---|---|---|---|---|
| Hendersonville Tax Collector (#12336 – Mr. and Mrs. Blanchard) | 1/16/02 | $916.20 | | XX | |
| Hendersonville Country Club (#656) | 5/3/02 | $350.00 | | XX | |
| Fortis Insurance (Acct. 330360) | 8/12/02 | $1728.82 | | XX | |
| Advanced Business Equipment (Invoice #428171) | 12/31/02 | $2130.00 | | XX | |
| BellSouth Account (828-693-0222) (Blanchard's firm phone number) | 3/25/03 | $1813.21 | | XX | |
| Ronald Blanchard (deposited in Blanchard's firm operating account) | 10/31/03 | $1500 | | XX | |
| Ronald Blanchard (deposited in Blanchard's firm operating account) | 5/15/03 | $2,500.00 | XX | | |
| BellSouth Account (828-693-0222) (Blanchard's firm phone number) | 6/26/03 | $1,962.54 | XX | | |
| Ronald Blanchard (deposited in Blanchard's firm operating account) | 11/3/03 | $5,000.00 | XX | | |
| USAirways (Ticket for Ronald Blanchard) | 1/9/02 | $300.00 | XX | | |
| NC Bar Association | 1/29/01 | $145.00 | XX | | |
| NC Academy of Trial Lawyers | 8/18/01 | $250.00 | XX | | |
| America Bar Ass'n – Membership | 8/22/01 | $390.00 | XX | | |

7

| | | | | | | |
|---|---|---|---|---|---|---|
| NC Academy of Trial Lawyers | 7/5/01 | $750.00 | XX | | | |
| BellSouth Account (828-693-0222) (Blanchard's Firm Phone Number) | 2/21/03 | $1951.90 | | | | XX |
| Ronald Blanchard (deposited in Blanchard's firm operating account) | 12/27/02 | $1500.00 | | | | XX |
| Cathleen Blanchard (Ronald Blanchard's Spouse) | 3/13/03 | $1500.00 | | | | XX |
| Erie Family Life Insurance (Memo: Ron Blanchard #864341) | 5/10/03 | $1327.50 | | | | XX |
| N.C. Department of Revenue (Estimated Tax for 2003) | 6/16/03 | $3500.00 | | | | XX |
| Ronald Blanchard (deposited in Blanchard's firm operating account) | 6/13/03 | $2000.00 | | | | XX |
| Ronald Blanchard (deposited in Blanchard's firm operating account) | 6/14/03 | $1000.00 | | | | XX |

The Account statements and convenience checks referenced above are attached as Exhibits E through G to the Affidavit of Deborah L. Fisher. Certain personal information on these statements and checks are redacted.

Mr. Blanchard also made regular payments on his three Accounts as the attached, scanned checks indicate. *See id.* ¶ 17 and Exhs. H-J. In addition, on September 29, 2000, months after the Amendment was sent, Mr. Blanchard sent a written notice to MBNA disputing one charge made on account number 5490-9935-2665-7673 for a tape/manual package: *Handling a Social Security Disability Case in Tennessee. See id.*, ¶ 18 and Exh. K.

By the end of 2003 Mr. Blanchard stopped paying on his Accounts. By the time the three Accounts were charged off in 2004, Mr. Blanchard owed just under $50,000 to MBNA. *See id.*, ¶ 20. Additional interest has accrued since that time. However, plaintiff now contends that none of these changes were authorized.

## MBNA's Attempted Arbitration and Mr. Blanchard's Lawsuit

MBNA, through the law firm of Wolpoff and Abramson, initiated arbitration proceedings in the National Arbitration Forum against Mr. Blanchard pursuant to the Agreements, seeking to collect on the sums owed on Mr. Blanchard's Accounts. *See* Moss Affid., ¶ 5. In response, on February 22, 2005 Mr. Blanchard filed a complaint in North Carolina State District Court for Henderson County, seeking to enjoin two of the three arbitrations. MBNA was served by hand delivery on March 8, 2005.

In his complaint Mr. Blanchard alleges that he had never applied for credit with MBNA, never authorized another person to apply for credit on his behalf, and never asked MBNA to issue a credit card on his behalf. Complaint, at ¶¶ 10-15, 19. Rather, Mr. Blanchard alleges that his long-time bookkeeper, Kathy McDonald, had stolen money from Mr. Blanchard.[1] Mr. Blanchard contends that he had not opened an account with MBNA. Complaint, at ¶ 19. However, Mr. Blanchard does not assert that he did not use the three Accounts, or that all the charges on the Accounts were not his, or that his employees were not authorized to open or use the accounts, or that he or his firm did not benefit from the charges made on the Accounts. Upon information and belief, given the above charges and payments, Mr. Blanchard could not in good faith contend that he did not use the Accounts or benefit from them.

---

[1] MBNA has since learned that certain indictments have been filed against Ms. McDonald. However, these indictments do not relate to the MBNA Accounts at issue; rather, they relate to Ms. McDonald's alleged unauthorized use of Mr. Blanchard's American Express card and other accounts.

9

In his Complaint, Mr. Blanchard claims that more than $30,000 is in dispute, Complaint, at ¶¶ 39, 42, and he seeks treble damages under Chapter 75 of the North Carolina General Statutes. Complaint, ¶ 58. As complete diversity exists, this Court has subject matter jurisdiction.[2]

### The Arbitration Clause is Enforceable Under the Federal Arbitration Act ("FAA")

Pursuant to the Arbitration Clause contained in the Agreements, the Court should enter an order dismissing this case so that the parties may arbitrate this dispute. The Arbitration Clause provides that "[a]ny claim or dispute ("Claim") by either you or us against the other. . . arising from or relating in any way to this Agreement or any prior Agreement or your account ... including Claims regarding the applicability of this Arbitration Section or the validity of the entire Agreement or any prior Agreement, shall be resolved by binding arbitration. . .". Fisher Affid., ¶ 10 and Exhs. B-D.

Under the Federal Arbitration Act ("FAA"), a court is required to stay "any suit or proceeding" pending the arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. "[I]n applying [common law] principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the [FAA], due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S 468, 475-76 (1989) (citations omitted). Thus, "when the scope of the

---

[2] Subject matter jurisdiction also is alleged given the Complaint's claims relating to the Federal Arbitration Act and the Truth in Lending Act.

arbitration clause is open to question, a court must decide the question in favor of arbitration." *Long v. Silver*, 248 F.3d 309, 316 (4th Cir. 2001) (citation and internal quotation marks omitted). Given this presumption, "[a] broadly-worded arbitration clause" – such as the MBNA arbitration clause – "applies to disputes that do not arise under the governing contract when a 'significant relationship' exists between the asserted claims and the contract in which the arbitration clause is contained." *Id.* (citation omitted). In other words, if the issues before the Court are within the contemplation of the arbitration agreement, "the FAA's stay-of-litigation provision is mandatory, and there is no discretion vested in the district court to deny the stay." *United States v. Bankers Ins. Co.*, 245 F.3d 315 (4th Cir. 2001) (citations omitted).

### By Using the Accounts and Benefiting From Them, Mr. Blanchard is Subject to The Terms Of the Arbitration Clause

The arbitration clause contained in the Agreements is enforceable. To be enforceable, the arbitration clause need only be contained in a written contract; there is no requirement that the arbitration agreement actually be signed by the party to be bound. *See, e.g.,* 9 U.S.C. § 2. The Federal Arbitration Act's "in writing" requirement reflects the widespread practice that transactions are concluded by the exchange of forms and by the conduct of the parties after the receipt of forms that are not signed or returned. Accordingly, numerous cases have enforced an arbitration clause even when the party resisting arbitration did not sign the contract containing the clause. *See, e.g., Carolina Throwing Co. v. S & E Novelty Corp.*, 442 F.2d 329 (4th Cir. 1971) (salesnote written and signed by broker constituted a binding agreement to arbitrate between the

11

parties, even though neither party signed the note in the space provided); *M&I Elec. Indus., Inc. v. Rapistan Demag Corp.*, 814 F. Supp. 545 (E.D. Tex. 1993) (finding arbitration clauses in purchase orders effective despite failure to sign purchase orders: "Neither the [Federal Arbitration] Act nor the courts require that written agreements be signed or subscribed by the parties."); *Imptex Intern. Corp., v. Lorprint, Inc.*, 625 F. Supp. 1572 (S.D.N.Y. 1986) ("While an arbitration agreement must be in writing to be enforceable, there is no requirement that it be signed. It is sufficient that the parties by act or by conduct are committed to it."); *Al-Salamah Arabian Agencies Co., Ltd. v. Reece*, 673 F. Supp. 748, 750-51 (M.D.N.C. 1987) (enforcing arbitration provision in contract despite lack of signatures on contract when both parties performed pursuant to the terms of the contract).

In this case, for more than a decade Mr. Blanchard had an unbroken history of use of the three Accounts for his personal benefit and for the benefit of his business, as the attached statements reflecting Mr. Blanchard's charges demonstrate. For more than a decade, Mr. Blanchard made payments on these Accounts using his firm checking account. He received a refund check, challenged a duplicate charge, and otherwise made full use of the Accounts. Whether he opened the Accounts himself, or whether he did so through his agent, Kathy McDonald, is not relevant. *See Carolina Throwing*, 442 F.2d at 310. In either instance, Mr. Blanchard is subject to the terms of the Agreements, including the arbitration clause contained in the Amendment.

12

## The Amendment, Including the
## Arbitration Clause, is Enforceable

The Accounts are governed by Delaware law, and Delaware law specifically permits MBNA to amend its card agreements by adding terms providing for arbitration:

**Amendment of agreement.**

> (a) Unless the agreement governing a revolving credit plan otherwise provides, a bank may at any time and from time to time amend such agreement in any respect, whether or not the amendment or the subject of the amendment was originally contemplated or addressed by the parties or is integral to the relationship between the parties. Without limiting the foregoing, such amendment may change terms by the addition of new terms or by the deletion or modification of existing terms, whether relating to . . . the manner for amending the terms of the agreement, arbitration or other alternative dispute resolution mechanisms, or other matters of any kind whatsoever.

See 5 Del. Code § 952(a); *Edelist v. MBNA America Bank*, 790 A.2d 1249 (Del. Sup. Court 2001).

The Amendment containing the Arbitration Clause was sent to Mr. Blanchard in late 1999 to his Post Office Box in Hendersonville, North Carolina. This is the same address where his Account statements were sent, and it is the address from which Mr. Blanchard made payments on his Accounts. Neither the Amendment nor the statements sent to Mr. Blanchard were returned to MBNA as undeliverable. Moreover, MBNA kept a separate file of credit holders who exercised their opt-out privilege, and there is no record that Mr. Blanchard ever exercised the opt-out privilege by opting out as the notice of Amendment provided. "The opt-out availability has been held valid as a means of enforcing the means to amend the credit card agreement." *Joseph*

13

*v. M.B.N.A. America Bank, N.A.*, 148 Ohio App. 3d 660, 663, 775 N.E. 2d 550 (2002).

Mr. Blanchard's failure to comply with the terms of the opt-out provision, and his continued charges to the Accounts after February 1, 2000, operate as acceptance of the Arbitration Clause under Delaware law. *See Edelist v. MBNA America Bank*, 790 A.2d 1249, 1257-58 (Del. Sup. Ct. 2001); *Bank One, N.A. v. Coates*, 125 F. Supp.2d 819 (S.D. Miss. 2001) (enforcing written notification and opt-out process that added arbitration clause into agreement); *Hale v. First USA Bank, N.A.*, 2001 WL 687371 (S.D.N.Y. June 19, 2001); *Marsh v. First USA Bank*, 103 F. Supp.2d 909, 918-19 (N.D. Tex. 2000) (concluding that the plaintiffs were contractually bound by a mailed arbitration amendment when they did not follow the amendment's prescribed written opt-out procedure and continued to use their credit cards); *Joseph v. MBNA Am. Bank, N.A.*, 148 Ohio App. 3d 660, 664, 775 N.E.2d 550 (2002) ("M.B.N.A. included an opt-out clause for [the plaintiff], but he did not use it. Consequently, he must be held to the amendment of the credit card agreement.").

Therefore, Mr. Blanchard is bound by the terms of the amended Agreement, and his claims are subject to arbitration.

## **Conclusion**

For these reasons, and for others the Court may find persuasive, the Court should enter an order dismissing (or staying) this lawsuit so that it may be arbitrated pursuant to the Arbitration Clause. The Court also should grant MBNA any other legal or equitable relief to which it may be entitled.

WHEREFORE, plaintiffs request that the Court grant their motion to dismiss to permit arbitration.

This the 21st day of April, 2005.

SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, L.L.P.

By: /s/ Michael E. Weddington
Michael E. Weddington
N. C. State Bar No. 5885
Jackson Wyatt Moore, Jr.
N. C. State Bar No. 29912
2500 Wachovia Capitol Center
P. O. Box 2611
Raleigh, North Carolina 27602-2611
(919) 821-1220
(919) 821-6800 (fax)

Attorneys for Defendant

#781643_1.DOC

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this date served the foregoing document in the above-entitled action upon all other parties to this cause by depositing a copy thereof, postage paid in the United States mail, addressed to the attorney or attorneys for said parties as follows:

>Boyd B. Massagee, Jr.
>Prince, Youngblood & Massagee
>240 Third Avenue West
>Hendersonville, NC 28739

This the 21st day of April, 2005.

_____
Michael E. Weddington

#781643_1.DOC